United States District Court
Southern District of Texas
**ENTERED**
September 02, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ANTONIO CIPRIANO LOPEZ, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:19-CV-00157 |
| § | |
| ANDREW SAUL,[1] COMMISSIONER § | |
| OF THE SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## **MEMORANDUM AND ORDER**

Plaintiff Antonio Cipriano Lopez ("Lopez") seeks judicial review of an administrative decision denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Before me, with the consent of the parties, are competing motions for summary judgment filed by Lopez and Defendant Andrew Saul, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 16, 20.

### **BACKGROUND**

Lopez filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging disability as of January 1, 2015. Lopez's applications were initially denied and denied again upon reconsideration.

---

[1] After Lopez filed suit, Andrew Saul ("Saul") became the Commissioner of the Social Security Administration. Saul is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

Subsequently, an administrative law judge (the "ALJ") held a hearing and found Lopez was not disabled. Lopez filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standards, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

"[A] claimant is disabled only if [he] is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (internal quotation marks, citation, and emphasis omitted). To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Id.* (quotation marks and citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ("RFC")." *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (quotation marks, brackets, and citations omitted). "The RFC is used in both step four and step five to determine whether the claimant is able to do [his] past work or other available work." *Id.*

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

## THE ALJ'S DECISION

The ALJ found at step one that Lopez had not engaged in substantial gainful activity since January 1, 2015.

The ALJ found at step two that Lopez had the following severe impairments: morbid obesity; diabetes mellitus with peripheral neuropathy; chronic kidney disease; depressive disorder; personality disorder; and post-traumatic stress disorder ("PTSD").

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Lopez's RFC, as follows:

> After careful consideration of the entire record, I found the claimant had the residual functional capacity to: lift, carry, push, or pull twenty pounds, occasionally, and ten pounds, frequently; sit six hours in an eight-hour workday with normal breaks; stand six hours in an eight-hour workday with normal breaks; and walk six hours in an eight-hour workday with normal breaks. The work could not require climbing ropes, ladders, or scaffolds and was limited to occasionally climbing ramps or stairs. Additionally, the work could not be at unprotected heights or in the presence of dangerous machinery and could not require driving. Further, the work was limited to moderate exposure to heat. The work could not require reading for comprehension or more than simple work recognition and was limited to understanding, remembering, or carrying out simple one, two, or three-step routine tasks in an environment requiring few decisions. As well, the work was limited to occasional interaction with supervisors and co-workers and no interaction with the public.

Dkt. 7-5 at 60 (emphasis and footnote omitted). At step four, based on this RFC assessment, the ALJ found that Lopez is not capable of performing past relevant work as a mechanic, construction laborer/general laborer, or cleanup worker because the "demands of the claimant's past work exceeded his residual functional capacity." *Id.* at 64.

At step 5, the ALJ considered Lopez's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines to determine if there was any other work he could perform. At the time of the ALJ's hearing, Lopez was 45 years old, had a limited education, and was able to communicate in English. Based on the relevant factors,

4

the ALJ concluded that Lopez was "not disabled" and "there were jobs existing in significant numbers in the national economy [that Lopez] could perform." *Id*. (emphases omitted). Specifically, the ALJ accepted the vocational expert's testimony that Lopez could still perform the following jobs: garment sorter (Dictionary of Occupational Titles ("DOT") 222.687-014); mail sorter (DOT 209.687-026); and laundry sorter (DOT 361.687-014). Accordingly, the ALJ determined that Lopez was not disabled under the Act and was not entitled to benefits.

## DISCUSSION

Lopez argues that remand is warranted based on several points of error: (1) the ALJ failed to apply Social Security Ruling ("SSR") 82-59, 1982 WL 31384; (2) the vocational expert's testimony does not constitute substantial evidence because it was based on a flawed hypothetical question that excluded limitations contained in the RFC; (3) the ALJ's RFC determination is not supported by substantial evidence because (a) she relied upon a misinterpretation of Lopez's Global Assessment of Functioning ("GAF") score and (b) she relied upon her own interpretation of a medical finding in discounting the effects of Lopez's peripheral neuropathy without any support from a medical authority; and (4) the Appeals Council failed to consider new evidence that contradicts the ALJ's determination.

A.   **APPLICATION OF SSR 82-59[2]**

Lopez first argues the requirements of SSR 82-59 apply because the ALJ's ultimate finding was based "significantly on the ALJ's perception that [his] failure to follow a prescribed treatment caused the condition to be worse than it might otherwise be." Dkt. 17 at 18 (quotation marks omitted).

Under SSR 82-59, "[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability." 1982 WL 31384, at *1. Failure to follow prescribed treatment is an issue only where all of the following conditions exist:

> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) . . . ; and
>
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
>
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
>
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.

---

[2] The Social Security Administration rescinded and replaced SSR 82-59 effective October 29, 2018. However, at the time of the ALJ's decision in this case (May 23, 2018), SSR 82-59 was the rule in place. Because of this, I will rely upon SSR 82-59 in my evaluation of the ALJ's decision. *See, e.g., Nickerson v. Berryhill*, No. 4:15-CV-2727, 2017 WL 1106302, at *15 (S.D. Tex. Mar. 24, 2017) (finding that the ALJ did not err in applying a Social Security Ruling in effect at the time of the ALJ's determination despite the fact that it was subsequently superseded).

*Id.* "An ALJ can consider a claimant's failure to follow prescribed treatment to assess the claimant's credibility or to determine the severity of a claimant's alleged subjective symptoms without having to mention or follow the requirements of [SSR] 82-59." *Alford v. Comm'r of Soc. Sec.*, No. 3:18-CV-457-CWR-MTP, 2019 WL 4389050, at *1 (S.D. Miss. Sept. 13, 2019). But, "SSR 82-59 applies when the ALJ's RFC determination or the ultimate disability determination rests on the Plaintiff's failure to follow prescribed treatment." *Emmitt v. Saul*, No. 4:17-CV-02953, 2019 WL 3500558, at *11 (S.D. Tex. Aug. 1, 2019). *See also Michael P. v. Berryhill*, No. 3:17-CV-1464-BK, 2018 WL 4637340, at *7 (N.D. Tex. Sept. 24, 2018) ("If, however, the ALJ relies almost exclusively on . . . noncompliance with prescribed treatment to determine Plaintiff's RFC, then the ALJ must adhere to the policy issued in SSR 82-59.") (internal quotations marks and citation omitted).

Here, the ALJ mentions Lopez's failure to follow prescribed treatments several times throughout her discussion of Lopez's RFC. *See* Dkt. 7-5 at 60–64. Only one sentence in the entire discussion amounts to anything more than the ALJ merely noting Lopez's compliance and noncompliance with prescribed treatment. *See, e.g., Michael P.*, 2018 WL 4637340, at *7 ("[T]he ALJ merely noted Plaintiff's noncompliance with prescribed treatment as one of many factors in his analysis."). That one sentence provides: "I inferred the claimant would have sought more consistent treatment and would have been compliant with medication if his symptoms were as severe as alleged." Dkt. 7-5 at 63–64. In my view, this sentence, at most, amounts to an assessment of the credibility of Lopez's allegations regarding the severity of his symptoms. Thus, as described by the court in *Alford,* the requirements of SSR 82-59 do not apply. *See* 2019 WL 4389050, at *1 ("An ALJ can consider a claimant's

7

failure to follow prescribed treatment to assess the claimant's credibility or to determine the severity of a claimant's alleged subjective symptoms without having to mention or follow the requirements of [SSR] 82-59.").

**B.      THE ALJ'S HYPOTHETICAL TO THE VOCATIONAL EXPERT**

Next, Lopez contends that the

> functional limitations outlined by the ALJ in his RFC finding [included] a limitation to work that "could not require reading for comprehension or more than simple work recognition."  The ALJ did not include such limitation in his hypothetical question to the [vocational expert].  Therefore, the ALJ's hypothetical question to the [vocational expert] failed to incorporate all of the functionally limiting factors that he found applied to Lopez.

Dkt. 17 at 21 (citations omitted).  Lopez argues that because the ALJ presented the vocational expert with a flawed hypothetical, the vocational expert's testimony does not constitute substantial evidence.  I am not persuaded.

The ALJ has a duty to fully and fairly develop the record.  *See Newton*, 209 F.3d at 458.  If an ALJ relies on a vocational expert's testimony elicited by a defective hypothetical question, the ALJ does not meet her burden to show that a claimant could perform available work.  *See Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (vacating the ALJ's decision because the ALJ's reliance on the answer to a hypothetical question that did not accurately reflect the plaintiff's mental impairment constituted a decision that was not supported by substantial evidence).  As explained by the Fifth Circuit:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's

> findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

As mentioned above, the ALJ assessed Lopez's RFC and, among other limitations, included the limitation that any prospective "work could not require reading for comprehension or more than simple work recognition." Dkt. 7-5 at 60 (emphasis omitted). Lopez argues as if this limitation was not relayed to the vocational expert, but the ALJ's hypothetical specifically stated that "[t]he hypothetical person would be limited to . . . **no reading required of the job functions**" and "performing **simple, routine, repetitious work** with one, two or three-step instructions in an environment requiring few decisions." Dkt. 7-12 at 80–81 (emphasis added). Although the hypothetical posed by the ALJ was not identical to the ALJ's RFC assessment, it clearly incorporated reasonably all disabilities recognized by the ALJ. Thus, as an initial matter, I find that the ALJ did not err.

In fact, in my view, the hypothetical posed to the vocational expert was more restrictive—i.e., a limitation of "no reading required of the job functions"[3] is more restrictive than "work could not require reading for comprehension."[4] Given this fact, "any error in not presenting the [vocational expert] with an exact recitation of [Lopez's] RFC was harmless." *Carl v. Comm'r of Soc. Sec.*, No. 6:19-CV-1027-ORL-37EJK, 2020 WL 4454859, at *3 (M.D. Fla. July 16, 2020).

---

[3] Dkt. 7-12 at 80.

[4] Dkt. 7-5 at 60.

9

## C.     RFC DETERMINATION AND GAF SCORE

Lopez contends that the ALJ's RFC determination, regarding his mental functioning, is not supported by substantial evidence because she relied on an erroneous interpretation of his GAF score. Specifically, Lopez argues that the ALJ interpreted his GAF score of 50[5] as "indicating moderate symptoms" and then utilized that interpretation as evidence supporting the mental functional assessments of the State agency medical consultants, Matthew Turner, Ph.D. ("Dr. Turner") and Connie Benfield, Ph.D ("Dr. Benfield"). Lopez contends this is reversible error because "a GAF score of 50 demonstrates serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)" and the ALJ failed to address the contradiction between the GAF score and the consultants' opinions in any meaningful way. Dkt. 17 at 24 (internal quotation marks, citation, and emphasis omitted). I agree and find that remand is appropriate on this basis.

GAF "is a 100–point scale used to report the clinician's judgment of the individual's overall level of psychological, social and occupational functioning." *Locure v. Colvin*, No. 14-CV-1318, 2015 WL 1505903, at *8 n.5 (E.D. La. Apr. 1, 2015). "A GAF score of 41 to 50 is classified as reflecting serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Boyd*, 239 F.3d at 702 (quotation marks and footnote omitted). A claimant's GAF scores "are not determiners of an ability or inability to work." *McMurray v. Colvin*, No. G-16-017, 2017 WL 978706, at *4 (S.D. Tex.

---

[5] The record reflects that Lopez was assigned a GAF score of 50 on December 10 and 23, 2015, and on January 29, March 11, and April 8, 2016. Lopez's GAF score was originally assessed by his treating physicians at CommUnity Care.

Mar. 14, 2017) (citations omitted). The Commissioner does not endorse the use of GAF scores to determine disability, and federal courts have likewise declined to find a strong correlation between a claimant's GAF score and the ability to work. *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (explaining that a claimant's GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"); *Jackson v. Colvin*, No. 4:14-CV-756-A, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015) ("[F]ederal courts have declined to find such a strong correlation between an individual's GAF score and the ability or inability to work."). In fact, in the updated version of the Diagnostic and Statistical Manual of Mental Disorders, the American Psychiatric Association no longer recommends the use of the GAF scale as a diagnostic tool for assessing a patient's functioning due to its "conceptual lack of clarity and questionable psychometrics in routine practice." *Spencer v. Colvin*, No. EP-15-CV-0096-DCG, 2016 WL 1259570, at *6 n.8 (W.D. Tex. Mar. 28, 2016) (quotation marks, citation, and ellipsis omitted). While the "GAF scale is intended for use by practitioners in making treatment decisions[,] . . . GAF scores have a limited significance in a disability controversy because they do not necessarily relate to whether a claimant is disabled under the Act and may indicate problems that do not necessarily relate to an ability to hold a job." *Harris-Nutall v. Colvin*, No. 3:15-CV-3334-D, 2016 WL 3906083, at *5 (N.D. Tex. July 19, 2016). Nonetheless, "[a]lthough a GAF score does not determine disability, the ALJ is required to review the scores as part of the evidence of record and, based on the entire record, make a disability determination on a

case-by-case basis." *Hanner v. Saul*, No. 4:19-CV-02032, 2020 WL 4043637, at *4 (S.D. Tex. June 26, 2020).

In this case, the ALJ considered Lopez's GAF score of 50 in determining his RFC. As Lopez points out, the ALJ incorrectly described the score of 50 as being indicative of moderate symptoms, while, as recognized by the Fifth Circuit, a score of 50 indicates serious symptoms. *See Boyd*, 239 F.3d at 702. The ALJ went on to reference the GAF score as supporting the moderate limitations outlined by Dr. Turner and Dr. Benfield—the only doctors whose opinions the ALJ assigned great weight. While an ALJ is empowered to "discredit a GAF score if it is internally inconsistent or contradicted by other medical evidence," here, the ALJ failed to even acknowledge the contradiction, so she certainly did nothing to discredit the significance of the GAF score. *Hanner*, 2020 WL 4043637, at *4. In other words,

> this is not a case where the ALJ properly consider[ed] the GAF scores and provided legitimate reasons for discounting such scores. Rather, this is a case where the ALJ specifically relied upon the GAF scores of record in determining Lopez's mental functioning and in granting great weight to the opinions of the State agency medical consultants Drs. Turner and Benfield. The ALJ did not reject, but rather relied upon the reported GAF scores of record, while misinterpreting their meaning.

Dkt. 17 at 24. This factual error is problematic. *See Smith v. Colvin*, No. 1:14CV195-SA-DAS, 2016 WL 762693, at *9 (N.D. Miss. Feb. 25, 2016) ("Just as the court may not accept explanations not offered in the ALJ's opinion, it cannot ignore or disregard statements made by the ALJ in support of the decision." (internal quotation marks and citation omitted)).

The ALJ's "decision . . . is the only insight [I] have into the ALJ's decision making process," *id.* at *9 (internal quotation marks and citation omitted), and the ALJ's decision

12

provides me with no insight on how, or if, she resolved the conflict between Lopez's GAF score and the very medical opinions she sought to bolster by referencing the GAF score. This is an error that I cannot discount or overlook because "[c]onflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington*, 2017 WL 4351756, at *1.

Although the ALJ's conclusion as to the disability status of Lopez may ultimately be correct, she did not properly consider Lopez's GAF score when determining his RFC. I find that the error is harmful and remand is necessary because it is conceivable that the ALJ may have reached a different administrative conclusion if she realized the GAF score reflected serious symptoms, as opposed to moderate symptoms. *See McNeal v. Colvin*, No. 3:11–CV–02612–BH–L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013).

Because this error warrants remand, I do not reach Lopez's remaining arguments.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 16) is **GRANTED**, Defendant's Motion for Summary Judgment (Dkt. 20) is **DENIED**, and this case is **REMANDED** for reconsideration in accordance with this opinion and applicable law.

SIGNED this 2nd day of September, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE